993 So.2d 590 (2008)
Jason Ashley CUSHNIE, Appellant,
v.
STATE of Florida, Appellee.
Nos. 4D07-3856, 4D07-3857.
District Court of Appeal of Florida, Fourth District.
October 29, 2008.
*591 Carey Haughwout, Public Defender, and Tom Wm. Odom, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and August A. Bonavita, Assistant Attorney General, West Palm Beach, for appellee.
KLEIN, J.
Appellant, who was convicted of aggravated assault on a law enforcement officer and high speed fleeing and eluding, appeals, arguing that the trial court, sua sponte, should have held a hearing to determine if appellant was mentally competent. We affirm.
The police received a telephone call to the effect that appellant was suicidal, armed with a knife, and driving a car. When appellant saw the police arrive, he fled with the police in pursuit and ultimately crashed into one of the police cars, and backed his car into another car. An officer then approached appellant with his gun drawn, and appellant then used the knife to cut his wrists. One of the officers then tasered him and he was taken to the hospital.
After his arrest appellant moved for a bond reduction so that he could be transferred to a secure mental health facility, and at the hearing the arresting officers testified that they had found a suicide note in his car. At the time of his arrest appellant was on probation as a result of no contest pleas to possession of drugs.
Florida Rule of Criminal Procedure 3.210(b), provides:
Motion for examination.If, at any material stage of a criminal proceeding, the court of its own motion, or on motion of counsel for the defendant or for the state, has reasonable ground to believe that the defendant is not mentally competent to proceed, the court shall immediately enter its order setting a time for a hearing to determine the defendant's mental condition, which shall be held no later than 20 days after the date of the filing of the motion ...
Neither the parties nor the trial court raised any concern about appellant's competency below. The state, however, at the beginning of the trial, moved for an order to prevent the defense from mentioning that appellant had been Baker Acted[1] for his attempted suicide when he was arrested. The state pointed out that this evidence would be irrelevant because appellant was not relying on an insanity defense. Defense counsel argued that, *592 because of his mental state, appellant could not have formed the intent to commit the aggravated assault. The court ruled that this was a diminished capacity argument, which is not a defense, and held that the fact that appellant had been Baker Acted was not admissible.
After the state rested its case, the court conducted a colloquy with appellant regarding his decision as to whether to testify, and the court found that appellant was exercising his informed free will in electing not to testify. Again, no question was raised about his competency to stand trial. Appellant was found guilty and, at sentencing, appellant's father testified that appellant had been suffering from manic depression, that appellant had been receiving treatment, and that he appeared to have been functioning normally until his arrest on these charges. There was no suggestion from the father or defense counsel that appellant was not competent to proceed.
Appellant now argues, for the first time, that the trial court erred in not holding a hearing to determine whether he was competent to stand trial. He relies almost entirely on Kelly v. State, 797 So.2d 1278, 1279 (Fla. 4th DCA 2001); however, Kelly is distinguishable. As our opinion in Kelly explains:
The trial judge in this case acknowledged on the record that he had been familiar with Kelly, a mental health patient, for twenty years. He was also advised by Kelly's mental health counselor and attorney that Kelly had refused to take his medication (Haldol). On the day of trial, defense counsel advised that Kelly was competent to stand trial, but opined that he had a "reduced capacity to deal with stressful situations...." Kelly then piped in that he "never did nothing wrong in my whole life. I'm ready to get out of ... the country and go somewhere and lay up." The judge then stated that while Kelly was technically competent, "he's borderline. You know it as well." While the state wanted to admit Kelly to a treatment facility, the judge replied, "There is no appropriate facility. An appropriate facility for Ephone would be someplace where he would be put away for life in a home type situation that's secure. And they don't have them." Defense counsel then said he wanted a trial, so the court ordered Kelly to "[s]it down ... we're gonna have the trial."
Trial then proceeded. The state presented evidence that Kelly held up two large rocks and gestured as if he was going to throw them at some officers. It also showed Kelly threw a rock over one officer's head. During this incident, Kelly spoke to the officers about Jesus, ranting that "Jesus died, so I'm gonna die, and I'm taking someone with me." Kelly was disruptive during trial and had to be admonished by the court to sit down.
In concluding that the court should, on its own, have held a competency hearing, we explained:
The court found on the record that Kelly was only borderline competent. This finding is supported by Kelly's disruptive behavior during trial, nonsensical ramblings about leaving the country, and rantings about Jesus. Because all the parties involved, including defense counsel, worried about Kelly's "reduced capacity," it was incumbent upon the court to speak up and order a hearing when no one else asked for it.
Id. at 1280.
The present case is easily distinguishable from Kelly in that in Kelly, the defendant's behavior at trial was bizarre. In contrast, in the present case there was nothing to alert the court or counsel that *593 appellant was not, at the time of trial, competent to go to trial. Affirmed.
POLEN and STEVENSON, JJ., concur.
NOTES
[1] Baker Act, § 394.451, Fla. Stat. (2007).